Good morning. This case involves the interpretation of a sentencing guidelines section, which has been universally declared to be equivalent to the Armed Career Criminal Act's interpretation of a crime of violence. In this case, Mr. Chisolm was sentenced to a higher base offense level because of a crime of conviction that he had, which is criminal domestic violence of a high and aggravated nature. The Court of Appeals has already done the hard work on ruling on this case in somewhat similar fashion in the case of U.S. v. Hemingway, which this court decided not too long ago. It decided that the crime of assault and battery of a high and aggravated nature is not a crime of violence. This conviction for criminal domestic violence of a high and aggravated nature encompasses and includes the elements of ABHAN, assault and battery of a high and aggravated nature, which you all have already determined is not a crime of violence, and only adds to the discussion the criminal domestic violence component. Under South Carolina law, criminal domestic violence is a misdemeanor. It carries 30 days, and in this particular case, the definition of criminal domestic violence is causes physical harm or injury to a person's own household or a member of the household, or offer or attempt to cause physical harm or injury to a person's own household member, present ability, under circumstances creating fear of imminent peril. So really the issue that you have to decide is whether that additional component of criminal domestic violence, a misdemeanor, a 30-day misdemeanor, adds another element to ABHAN that causes it to be a crime of violence. So Judge Blatt, in this case, applied a modified categorical approach because this case was decided long before discounts was decided, well, not long before, but before discounts was decided, before Hemingway was decided. So he did not have the benefit of the Supreme Court's decision. But what is really interesting is when he was making this decision, the probation office, in this case, wrote in its addendum, so when I made the objections and the probation office made a response to my objection that this shouldn't be considered a crime of violence, the response was that CDBHAN is an overbroad statute, and therefore one must use the modified categorical approach. But the Supreme Court has now said that an overbroad statute doesn't let you use the modified categorical approach. If it's overbroad and it includes all kinds of elements that could be done with violence or not, then it's just not a crime of violence. You aren't allowed to go to the modified categorical approach if the elements itself show that it can be done without violence. So in this particular case, when, of course, you use the modified categorical approach, and in this very specific case, Judge Blatt actually looked at specific facts, which are not nice, the specific facts that the defendant, as alleged in the indictment, put his hands on the victim's throat and appears to have tried to strangle her. Those facts basically override any kind of legal analysis when you think about it, and you say, of course that's a crime of violence. But those are Shepard documents, aren't they? Those are Shepard documents, but you're not allowed to go to Shepard documents at all. For a modified approach? Pardon? You said for a modified? You are allowed to go to Shepard documents when you have a modified categorical approach, which is what Judge Blatt did. The government has conceded, and this court has ruled in Hemingway, and the government has conceded in this case that we cannot use the modified categorical approach at all. The government has conceded in its supplemental brief that we can only use the categorical approach. So when you look at the categorical approach— Correct. I agree. And I was hoping that we, you know, I think if we had come to this point early on in the case, you know, when we were back down in the district court, we probably wouldn't be here at all. But, of course, discounts in Hemingway wasn't decided at that point. So this court has decided in Hemingway that only the categorical approach can be used. You, of course, can decide whether, even though Abhan, we've already ruled, should be followed under the categorical approach, does the CDV addition to it let us go to the modified categorical approach? And my argument would be you're not allowed to still go. You're not allowed to go to the modified categorical approach because we have a statute that is indivisible, even with you adding those elements. But isn't criminal domestic violence at a high aggravated nature a separate crime? It is a statutory separate crime. And these are the elements. But by the nature of that, it's divisible, right? Is it not? No, sir. Why not? And I'll tell you. As under this structure here in South Carolina. Right. So the statute—because remember, Abhan was not a statutory crime. It was a common law crime. So the statute here says we, under 1625-65, you commit criminal domestic violence when you have the elements of Abhan, the common law Abhan, and you also have the crime of criminal domestic violence. Right. That's in the conjunctive, not the disjunctive. Correct. If it was in the disjunctive, you may have—but it's in the conjunctive. So you have the elements of C.D.V., Han are these. You have Abhan is one. That's right. And C.D.V., criminal domestic violence. So you have—this is what the statute says. You must have Abhan, assault and battery of high and aggravated nature, under the common law, which— That's right. You have to have that. And? And you have to have the statutory elements. Of criminal domestic violence. That's right. So here's what criminal domestic violence says. Remember, it's a misdemeanor. So criminal domestic violence— You said that three times, but does that matter in the capital— Yes. Misdemeanor? Yes. As well or not as violent? It matters because, in this analysis under the residual clause, you have to compare the elements or the crime to whether it presents the same serious potential risk of violence. And that's based on conduct, not the classification of the crime. No, sir. Okay. All right. Go ahead. It's not based on conduct. It's based on the elements in the crime. The elements are based on the— Well, here's why I say— Aren't you trying to say that because it's a misdemeanor, it can't be a crime of violence? Are you getting to that? No. Oh, I thought— Here's what I'm saying. Okay. When you do this analysis, as you have done in Hemingway, and you're looking at the residual clause to see whether the crime presents the same risk as those enumerated in the clause of burglary, robbery, and so forth, you compare the seriousness of the risk posed. This one is easy because it talks about just direct physical violence. Well— Others are talking about substantive crimes that may or may not be committed without physical counsel. Here I have some help from the Supreme Court. Let's try to keep this in some analytical framework, all right? Right. Well, here you have to have physical or the threat of physical contact. You don't need to look at other substantive crimes to see whether or not they could be committed with or without violence. Right. Why would you go to that? Here— And following up on Judge Gregory's question, why doesn't it come within the force clause? Well, first of all, again, the government has already agreed it doesn't come within the force clause. Well, make a conservative clause. Okay. So to come within the force clause, the element— As an element, the use, attempted use, or threatened use of physical force against the person of another. And the Supreme Court in Johnson has said that force means violent force. Right. Right? And this court has already said, so in the analysis of Abhan, which actually has the words causing a violent injury, right? Those are actually the words in Abhan, the elements, the definition of Abhan. Right. So we're saying that is not a violent—that is not equivalent to violent force because it can be committed without force at all or without physical injury. You're looking at the second requirement there, by circumstances of aggravation, correct? Well, actually, in Hemingway, this court said either component, either violent injury and circumstances of aggravation, neither one of those elements of Abhan require violent force. The key is require violent force. So, of course, violent force may happen. No question about it. That's why these crimes are bad. That's why nobody likes them. That's why it's against the law. But they don't require violent force. This one does. No, sir. It does. No, sir. C.D.V. It does. C.D.V. says it's an offer. It can be also an offer to or an attempt to cause physical harm or injury. That doesn't require violent force. It's the attempt to do so. But the phrase offer takes it out of the entire analysis. So you would say if you shoot at the person you miss, that's not violence? The problem here – Would you counsel on your analysis? Well, the problem here is, Judge, I think – Go ahead and answer my question. Yes, sir. Go ahead. Answer my question. If it was just me – Not just you. You're a counsel standing before the Fourth Circuit Court of Appeals, and you're suggesting that a mere attempt at violence, unsuccessful means not violent. So my question to you is, if you shot at your wife or your spouse and you missed, that's not violence? That is violence, Judge. Why? Why would that be violence? An attempted violence is violence. I agree with that. This statute doesn't even require attempted violence. This says offer. If I just stand here, I don't have a gun, and I have nothing, and I say, I'm going to shoot you, that could be a criminal domestic violence. The statute requires the apparent present ability under circumstances reasonably creating fear of imminent peril. So just standing there wouldn't meet the statute. But if you know that I have a gun in my drawer, I live with you, you know what I've got, you know I'm a bad guy, you know I have guns in the house, and I say, you do that one more time, I'm going to shoot you. Isn't that attempted use or threatened use of physical force? No. No. There's no physical force. You know, I'm going to answer that question with what Judge Gregory asked me for a moment, and I see that I'm done with my time. Go ahead. You know, this whole analysis, I will be honest with you, and, you know, Mr. Williams in his supplemental response said something very telling, which I completely agree with. He said, you know, this is a very confusing area of the law, and honestly, it's like a rabbit hole. You start making definitions and sub-definitions, and the common sense of it escapes everyone. And so, you know. Apparently except for Congress because they won't do anything about it. Well, what's so bizarre here, Judge, is just like a couple weeks ago, the Supreme Court decided Castleman, which is the criminal domestic violence under another section of 922. And here's what's so interesting. Here's what the Supreme Court said. Basically on our topic, the word violent. In terms of where you're going to tell us why you're standing there with a gun on the table next to you and threatening to shoot your spouse is not in the use of this provision. Yes. I guess I'll finish. But you hadn't answered the question yet. Okay. So here's what the Supreme Court said, I guess, two weeks ago in Castleman. It said the word violent or violence standing alone connotes a substantial degree of force. This is not true of domestic violence. Domestic violence is not merely a type of violence. It is a term of art encompassing acts that one might not characterize as violent in a non-domestic context. So here's the problem. And why this case isn't really on point for us is because it's only interpreting the term of art of criminal domestic violence in 18 U.S.C. 922 G9. Okay. And we're not interpreting that section. But what is so interesting about this decision is it's saying you can't use the words in criminal domestic violence in the same way that you use the words violent under the Armed Career Criminal Statute or under the sentencing guidelines. And so here we are now in this rabbit hole. I understand. You make a good point because in a marriage situation, it could be someone just bearing down constantly like, I hate you, I hate you, all in their face and just berating someone. In a domestic sense, that could be and is violent. But in a non-domestic situation, you couldn't say it's violent. Somebody said, I hate you. Otherwise, you say, okay, very well. And actually, that's exactly what they're saying. But the problem is, though, we do have to look at the elements. And they sort of reign that amorphous definition in, as I think you rightly point out, out of that language and do bring it down to the violence or the threat of that. And that's going back to Judge Agee's question. In the context of the hypothetical you raised, he wants the answer to when you raised yourself, how do you say that that's not with the gun in the drawer? Because as a common-sense ordinary person, people looking on, it looks pretty bad. It looks violent. It looks bad to me if it was a stranger. Right. I got a gun in the drawer. I'm going to shoot you. That's pretty convincing to me. Under the definitions, and that's all we're here about, you know, this is the de novo review. We're only looking at the legal issues, and we can't look at the facts. It's not. And, you know, no one is more surprised than I am that I'm here. I'll tell you that when Mr. Chisholm, when I first started representing Mr. Chisholm, and I can sit down any time you want me to tell you this. Yeah, well, you are getting the far field now in answering the question. So you have some time. Yes, sir. No, you don't. I'm all done right now. I know that for sure. You didn't ask for a rebuttal. I didn't. Well, interesting. Well, that's an interesting, I was about to say strategy, but no, that's an interesting choice, but you made it. She does? Yes, your Honor. Okay, well, the clerk saved you with her integrity, her normal integrity, and you do have some time reserved. Thank you, sir. Okay, sit down. Three minutes, right? Three minutes, okay. Mr. Williams says you are giving away the kitchen sink here. He says you conceded a lot of things. Maybe you can help us why you think that maybe. I can. Good morning, may it please the Court. My name is Nathan Williams. I'm an assistant U.S. attorney in Charleston, South Carolina. Any concessions we would have given were before the day camp Hemingway cases. So I think in our supplemental brief we didn't make those concessions, and clearly I think you all have said this in different ways. The force clause applies to CD hand. There are two elements, whether they're generally or otherwise divisible, of CDV hand, and they both involve either the use of physical force or the threatened or attempted use of physical force. Let me interrupt for one second. It seems like Ms. Walsh is trying to hang her hat on the word offer. And it says that that's not necessarily within the force clause. How do you respond to that? I think if that were all it said, that would be a better argument. Unfortunately, it says offer coupled with imminent peril and coupled with presentability. So, you know, when I think of the word offer in the domestic sense is, you know, I go home after work and tell my wife I'm offering to make dinner tonight. I think that's a typical type offer situation. But aren't those the elements typical, as in law school and the torts first year, in terms of it makes the tort actionable because it has to be present and in ability? But that doesn't make it violent, those elements of presence and ability. It makes it a threat, which makes it violent. I would say that, you know, how we determine the difference between an offer coupled with imminent peril. The question, though, is that offer connected with the offer of violence? Absolutely. If you read what CDV hand says, it says in the second element it's unlawful to offer or attempt to cause physical harm or injury to a household member with apparent presentability under circumstances reasonably creating fear of imminent peril. So I would suggest that an offer coupled with imminent peril becomes a threat. Somebody saying I have a gun and I'm going to shoot you, you can say all day I have a gun, and if there's no gun and it's not reasonably, you know, it's not a reasonable fear, meaning somebody says that every day, maybe that's not a reasonable threat or a reasonable fear of imminent peril. But if it's reasonable and it's offered, that is essentially a threat. You know, in law it's always, I guess, the thing, scriveners were paid by the word, so we get these did willfully, wantedly, deliberately, maliciously, all this. But what is the distinction between a threat and an offer? We try to give meaning to every word in the statute. Is there a difference between an offer and a threat? I think that in the context of this statute, no. But I would say an offer has to have more than just an offer. It has to have that, I would say the threat is really that reasonable creation of fear of imminent peril coupled with some language. I'm sorry, go ahead. When you use the word threat, looking at the language of the CD ban, is that what you're substituting for attempt? No, no, I'm substituting it for the offer. An attempt to me is some overt act of furthering. So you're saying that offer and threat would then be the same? I'm saying offering coupled with these second and third parts, which is presentability and circumstances reasonably creating imminent peril. I wouldn't say just an offer would ever be enough. It's as if, in the way you're arguing the statute said, threat to cause physical harm with the other stuff, not just offer. No, no, if I said that, I didn't intend it that way. That's what I was asking, I was confused. How do you offer without threat? For instance, if you didn't have any presentability and there was no, what I would say, imminent peril, for instance, I'm going to, as Troy Chisholm did, choke you until… The statute requires that these other parts be joined with the offer. Absolutely. So let's say Troy Chisholm walks home and goes to his girlfriend and says, I'm going to choke you two weeks from now. That's an offer. There's no apparent presentability at the time. Maybe he calls her on the phone. I'm going to choke you. There's no imminent peril and no presentability. But can you give us an example of an actionable offer that's not a threat? Right, just that situation. No, no, you just gave us one where it would be an offer and wouldn't have the other elements to make it actionable. I'm talking about an offer that's not a threat but it would meet the other definition of the statute. No, because I think when you add in reasonable fear of imminent peril, it becomes a threat. You have to read then that if Count Walsh is correct that offer is disjunctive, then she may have a point there. I think offer is disjunctive until you add the reasonable fear of imminent peril. I think that, to me, a threat is an offer coupled with imminent peril or the reasonable fear of imminent peril. What difference does it make then to have an offer that meets that? It's a threat, isn't it? It is. Then why is offer, pardon the pun, as a separate word? It means something. We have to give meaning to that word. All I can say is I think that's what people in South Carolina say. That's just a linguistic difference. We can't go by what the Palmetto State penitents say. We have to go by what their legislature wrote. In that sense, the world construes by their whip. We must construe by the law. So in that sense, if offer is a disjunctive word and you can offer and meet that and that's not violence, then that's a problem for you, wouldn't it be? Well, I think it would be if in the disjunctive it didn't also incorporate a person's own household member with apparent presentability and circumstances. I think what they're saying is offering plus those two things or attempting plus those two things. So if all that says is offer and it doesn't include the ability to injure a person's household member or creating a fear of imminent peril, absolutely. If you can offer something like this, Dan, if you say, you know, that brick is sitting in the other room, that would be a fine object to come in here and bash your brains out. I'm so angry with you. It would be an offer, not a threat. It would be an offer, and if it was reasonable for that to create imminent peril, then it would be a threat. It's that reasonableness of imminent peril that converts it from something that would be just a general offer, which is not criminal, to what I would say is an element of CDE hand. It is a linguistic issue, and certainly if... Yeah, I'm struggling with offer. Why would the legislature put the word offer in there? Well, if you look at the Abhan Statute, there's a lot of, and I say statute, the common law, Abhan rulings, there's a lot of confusing language in there. South Carolina still has a law of dueling on the books, which involves challenges, which are... See, that's the problem. I thought Ms. Walsh made a good point when she read that passage from the Supreme Court, because when you look at these cases, obviously, I shouldn't say obviously, but it's sort of rather plain to me, that when they wrote that statute, they wanted to be as broad as possible to deal with the things that involve domestic violence, and some of those are not really violent in other places, but it is violent. Every time you come home from work, you're no good. You're this, and beat up. Why is my supper not ready? In other words, that kind of thing. It offers the circumstances of violence, but it's not really a threat, but we want to make it... I don't know why we always try to shoehorn. People already get enough time in these federal crimes anyway. Why should we try to shoehorn everything in there to make it work? I mean, I even question whether or not even modified approach is even appropriate. That's another matter. That's my legal theory, that we're trying to find a way to shoehorn and give people more time. If it doesn't fit, we always have to try to find it. It's the rule of lenity I thought used to apply in these cases. I think that's why it doesn't make common sense, because the courts have tried to find a way to give somebody more time. These statutes weren't written for that purpose. They wanted to make them broad for protecting children, protecting people. That's why she makes a good point about the question of offer. Offer might be that element that's broad enough to cover those things that are not threats, but they're in the context of the domestic crucible that is, but maybe not, violent. That's my answer to that question. But I think there's also a contemporaneous problem with that, which is trying to determine what threatened means. It would be equally challenging, but for the inclusion of it in our guidelines. Threatening is pretty easy. I'm going to beat you up. I'm going to come in there and, you know, but offer is something they meant to be so that they can get convictions on people when it's not a threat, but it's offering the context of violence, but it's not a threat. It's that existential, you know, part of it. It's very clever. The legislature do it. I know it because I used to do criminal defense work. It had just enough in there to be that little soft spot to say it falls under it, even though clever lawyers say it's not a threat. They say it doesn't have to be. It's just an offer. And I think, again, that's whatever the legislature was thinking in the state of South Carolina. Well, has the Supreme Court of South Carolina said offer means threat? That would help you. No, it hasn't. There's not a lot of, and they also haven't said one way or the other that creating a fear of imminent peril is a threat when coupled with other activity. I will say I don't know that threat. That's the bottom line of your argument on these two disjunctive words in this part of the statute. You're saying offer is fully synonymous with threat and vice versa. I'm saying offered when added to that other language is a threat. Your argument is that if reading offer there, you could in all circumstances read threat. Is that true? Right, when coupled with those other. Right. To me, offer maybe isn't as important as the reasonable creation of fear of imminent peril. When we talk about threats, I think it's easy to take it as a verb, maybe more of a noun. I mean, the question of somebody standing next to a gun. Well, it is a transitive verb, you know, to threat. Threat is a noun. It could be a transitive verb to threaten someone. But when I think of what a threat is, I think it's the person with a gun next to them saying things, making offers. So to me, it's the danger present, not necessarily the words or what's said. And you can certainly have. You do know your position, though, is inconsistent with conventional statutory construction, that is we ought to give meaning to every word in the statute, unless somehow it's inconsistent. It doesn't seem to be inconsistent with a legislature trying to broaden the definition to cover a broader range of domestic violence. I thought it was rather brilliant for Mr. Walsh to bring in that quote. It's certainly apropos. It really does. That's exactly what they're trying to do. But that little difference, they wanted it to be a difference. We can't just wish it away and say it's synonymous in every circumstance. Well, I would say the definition that they give here, this offer with presentability under circumstance creating fear of imminent peril, would be a definition of a threat. I mean, it's a way of explaining what a threat is and probably a pretty good definition. I don't know that offer always means verbal either. You can offer something in a physical way. I watch too much baseball, and people offer pitches to batters. There's terms in the statute which I would say is probably better than the word threatening. I think it's more descriptive, and you could have a threat that wouldn't include imminent peril, and this statute would fix that. So I feel like it fits squarely under the force clause. I think Abhan created a lot of confusion because it was common law and because there's a lot of cases interpreting it, but I think C.D.V. hand gets us back to a more direct argument and probably a more reasonable result. If you don't have any other questions, I have nothing else to add. Okay. Thank you, Mr. Willis, for your argument. Ms. Walsh, you do have some time reserved. Thank you. I know it's slightly irrelevant to the issue, but just to perhaps put this in perspective, I didn't represent Mr. Chisholm in his original trial or his sentencing, and then when he filed a 2255 action, I was appointed to start representing him. And that was many years ago before any of these cases, and his writing to me saying C.D.V. hand is not a crime of violence, Abhan is not a crime of violence, blah, blah, blah. I said, you know, I'll present your arguments. The law is so against you, I don't even agree with you, but I'm going to go ahead and do it. And so all these objections were preserved when, you know, any normal person who listens to what these words mean, who listens to the elements of the statutes, who hears the words criminal domestic violence, how could it not be a crime of violence? And I heard Mr. Williams say that he wants the force clause to apply. The force clause is clause one, typically under 924E or under the sentencing guidelines. Here's what the Supreme Court says must be present for the force clause to be applied. There must be the element of violent force in the statute. That has to be the first thing for the force clause, which is clause one, to apply. What if the statute is divisible? You can go to the modified category. I mean, I think you're making a really good point on this issue, but it seems to me that you've still got a problem with the fallback. And the fallback is, if it's a divisible statute, one requires violence, one does not necessarily, then under De Camp, you can look at the Shepherd of Puke documents, can't you? And they definitely put your guy in the category of violence. Let's go that route, Judge. Let's say we're going to make this a divisible statute. So now let's look at the CDV statute and see if there is an element of violent force in any part of it. And it's still not there. The element of violent force is not present. There's no intent requirement in any part of the statute. It doesn't cause physical harm or injury. Right. It doesn't require violent force. I can cause physical harm or injury in, again, any of a variety of ways. I can do it recklessly. I can do it negligently. I can do it carelessly. I don't have to have the intent to do it, and I don't have to use violent force to do it. And that's why this is so nonintuitive. Well, you could yell at someone and they fell backwards and tripped up and bust their lip. I mean, this is the kind of stuff that you hold it in your brain for a second and you turn your head and it evaporates because it's so evanescent and so meaningless unless you are comparing what the Supreme Court says with what the statute actually says. Because I agree with you, Judge Keenan, when you look at the statute. Of course physical harm or injury should require violence, but Johnson says no. The element of violent force has to be present. You might assume that violence causes the physical force, but that doesn't cut it under the Supreme Court analysis, and I see that my time is up. Thank you very much. Thank you very much. Thank you both. We will come down to the Greek Council and proceed to our last case for today.
judges: Roger L. Gregory, G. Steven Agee, Barbara Milano Keenan